<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS MANUEL GARCIA AGUASVIVAS, | Civil Action No. 13-1161 (PGS) |
| Petitioner, | |
| v. | OPINION |
| BRIAN ELWOOD, | |
| Respondent. | |

**APPEARANCES**:

    CARLOS MANUEL GARCI*A* AGUASVIVAS, A 044-875-218
    Monmouth County Correctional Institution
    1 Waterworks Road
    Freehold, NJ   07728
    Petitioner *Pro Se*

    DAVID E. DAUENHEIMER, Assistant U.S. Attorney
    Office of the U.S. Attorney
    970 Broad Street Suite 700
    Newark, NJ   07102
    Attorney for Respondent

<u>**SHERIDAN, District Judge**</u>:

    Carlos Manuel Garcia Aguasvivas, who is detained at Monmouth County Correctional Institution in New Jersey, filed a Petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his pre-removal period detention without a bond hearing, pursuant to 8 U.S.C. § 1226(c), in the custody of the Department of Homeland Security ("DHS"), nine years after he was sentenced in 2001 to one day of incarceration (and five years of probation) for a crime specified in § 1226(c). Respondent filed an Answer arguing that the Petition should be stayed pending a ruling by the Third Circuit or dismissed because Garcia Aguasvivas must be detained without a bond hearing pursuant to

§ 1226(c). After reviewing the submissions of the parties and for the reasons set forth below, this Court holds that Garcia Aguasvivas' detention is governed by 8 U.S.C. § 1226(a), which requires the Immigration Judge to conduct a bond hearing to determine whether detention is necessary to avoid a danger to the community or risk of flight. This Court will grant a Writ of Habeas Corpus directing the Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a) to determine if Garcia Aguasvivas presently poses a flight risk or danger to the community.

## I.   BACKGROUND

Carlos Manuel Garcia Aguasvivas, a native and citizen of the Dominican Republic, challenges his detention without a bond hearing in the custody of DHS at Monmouth County Correctional Institution. On January 28, 1995, when Garcia Aguasvivas was 16, the United States admitted him as a lawful permanent resident. On July 5, 2000, the State of New York sentenced him to conditional discharge after he pled guilty to criminal possession of cocaine in the seventh degree. (ECF No. 6-2 at 5.) On October 9, 2001, New York entered a judgment sentencing him to imprisonment of one day, license suspension of six months, probation of five years, and a $210 surcharge, after he pled guilty to attempted criminal sale of a controlled substance in the third degree. (ECF No. 6-3 at 2, 4.) On August 12, 2010, DHS arrested him at his home in Brooklyn, and served him with a notice to appear for removal. The notice to appear charges that he is subject to removal from the United States under § 237(a)(2)(A)(iii) (conviction of an aggravated felony) and § 237(a)(2)(B)(i) (conviction of law relating to a controlled substance). DHS has detained Garcia Aguasvivas without a bond hearing pursuant to § 1226(c) since August 12, 2010.[1]

---

[1] Pursuant to a writ of habeas corpus ad prosequendum issued by the Supreme Court of the State of New York, DHS turned over physical custody of Garcia Aguasvivas to the Kings County District Attorney's Squad on July 7, 2011, and New York returned him to DHS custody on June 25, 2012. (ECF No. 6-4 at pp. 2-7; ECF No. 6-5 at p. 2.)

On February 27, 2013, the Clerk accepted Garcia Aguasvivas' *pro se* habeas petition for filing. He argues that his detention without an opportunity to be heard as to whether he poses a danger or a flight risk violates 8 U.S.C. § 1226 because he is not an alien who was taken into DHS custody "when the alien was released" from criminal incarceration for an offense enumerated in § 1226(c), and he has a substantial challenge to removal.[2] DHS filed an Answer, together with the declaration of counsel and several exhibits. (ECF No. 6.) DHS argues that this Court should: (1) stay the matter until the Third Circuit decides *Sylvain v. Attorney General*, C.A. 11-3357 (3d Cir. docketed Aug. 31, 2011); or (2) defer to the Board of Immigration Appeal's interpretation of § 1226(c) in *Matter of Rojas*, 23 I.&N.Dec. 117 (BIA 2001); or (3) if § 1226(c) requires immediacy, then find that the statute does not deprive DHS of the authority to detain aliens without a bond hearing, even where the alien was taken into DHS custody nine years after he allegedly served a one-day sentence for an offense listed in § 1226(c).[3]

## II.   DISCUSSION

A.   Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241

---

[2] Although he has been detained for over two and one-half years, Garcia Aguasvivas does not claim in the Petition that he is entitled to a bond hearing under *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), on the ground that his pre-removal period detention under § 1226(c) has been unreasonably prolonged. This Court will therefore not consider this issue in the present petition.

[3] Although this Court's Order to answer directed DHS to specify in the answer and to provide documentation of the date on which Garcia Aguasvivas was released from criminal incarceration for a crime listed in § 1226(c), the Answer does not identify the date of release and DHS did not document the date of release from criminal incarceration. (ECF No. 6.)

because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), and he asserts that his detention without a bond hearing is not statutorily authorized by 8 U.S.C. § 1226. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Diop v. ICE/Homeland Security*, 656 F. 3d 221, 226 (3d Cir. 2011).

B.   Requirement for "Release After" October 8, 1998

Section 1226(c) was enacted as § 303(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See* IIRIRA, Pub.L. No. 104-208, § 303(a), 110 Stat. 3009 (1996), codified at 8 U.S.C. § 1226(c). Section 303(a) of IIRIRA provides:

(a) IN GENERAL.—Section 236 (8 U.S.C. 1226) is amended to read as follows:

"APPREHENSION AND DETENTION OF ALIENS"

"SEC. 236. (a) ARREST, DETENTION, AND RELEASE.—On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

"(1) may continue to detain the arrested alien; and

"(2) may release the alien on—

"(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

"(B) conditional parole; but

"(3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

"(b) REVOCATION OF BOND OR PAROLE.—The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

"(c) DETENTION OF CRIMINAL ALIENS.—

"(1) CUSTODY.—**The Attorney General shall take into custody any alien who**—

"(A) is inadmissible by reason of having committed any offense covered in section 212(a)(2),

"(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),

> "(C) is deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>
> "(D) is inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B),
>
> **when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.**
>
> "(2) RELEASE.—The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation . . .

IIRIRA, Pub.L. No. 104-208, § 303(a), 110 Stat. 3009 (1996) (emphasis added).

Section 303(b) of IIRIRA provides that the effective date for the mandatory detention provision of § 303(a), codified as § 1226(c), will be delayed for up to two years at the Attorney General's request, and that during this two-year period the Transition Period Custody Rules ("TPCR") will be in effect. Section 303(b) of IIRIRA is set forth in relevant part below:

> (2) NOTIFICATION REGARDING CUSTODY.—If the Attorney General, not later than 10 days after the date of the enactment of this Act, notifies in writing the Committees on the Judiciary of the House of Representatives and the Senate that there is insufficient detention space and Immigration and Naturalization Service personnel available to carry out section 236(c) of the Immigration and Nationality Act, as amended by subsection (a) . . , the provisions in paragraph (3) shall be in effect for a 1–year period beginning on the date of such notification, instead of such section or such amendments. The Attorney General may extend such 1–year period for an additional year if the Attorney General provides the same notice not later than 10 days before the end of the first 1–year period. **After the end of such 1–year or 2–year periods, the provisions of [8 U.S.C. § 1226(c)] shall apply to individuals released after such periods.**
>
> (3) TRANSITION PERIOD CUSTODY RULES.—
>
> (A) IN GENERAL.—During the period in which this paragraph is in effect pursuant to paragraph (2), the Attorney General shall take into custody any alien who—
>
> (i) has been convicted of an aggravated felony (as defined under section 101(a)(43) of the Immigration and Nationality Act, as amended by section 321 of this division),

5

> (ii) is inadmissible by reason of having committed any offense covered in section 212(a)(2) of such Act,
>
> (iii) is deportable by reason of having committed any offense covered in section 241(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of such Act (before redesignation under this subtitle), or
>
> (iv) is inadmissible under section 212(a)(3)(B) of such Act or deportable under section 241(a)(4)(B) of such Act (before redesignation under this subtitle),
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (B) RELEASE.—The Attorney General may release the alien only if the alien is an alien described in subparagraph (A)(ii) or (A)(iii) and—
>
> (i) the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding, or
>
> (ii) the alien was not lawfully admitted to the United States, cannot be removed because the designated country of removal will not accept the alien, and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

IIRIRA, Pub.L. No. 104-208, § 303(b), 110 Stat. 3009 (emphasis added).

Significantly, § 303(b)(2) of IIRIRA specifies when § 1226(c) became applicable: "After the end of such 1–year or 2–year periods, the provisions of [8 U.S.C. § 1226(c)] shall apply to individuals **released after** such periods." IIRIRA, Pub.L. 104-208, § 303(b)(2) (emphasis added). Thus, § 303(b)(2) of IIRIRA limits the application of § 1226(c) to individuals "released after" October 8, 1998. *See Saysana v. Gillen*, 590 F.3d 7, 10 n.2 (1st Cir. 2009) ("The TPCR expired on October 8, 1998, and the mandatory detention provision of 8 U.S.C. § 1226(c) became effective"); *Matter of Garcia Arreola*, 25 I.& N.Dec. 267, 269 (BIA 2010) (Section 1226(c) "requires mandatory detention of a criminal alien only if he or she is released from non-DHS custody after the expiration of the TPCR and only where there has been a post-TPCR release that is directly tied to the basis for detention under [§ 1226(c)]").

In *Matter of West*, 22 I.&N. Dec. 1405 (BIA 2000), the BIA determined that § 1226(c) did not apply to West, who had pled guilty to offenses listed in § 1226(c) on September 29, 1998, and had been sentenced on February 5, 1999, to two years of probation, because West was not "released after" October 8, 1998.   The BIA expressly held that the word "released" in the "released after" language of § 303(b)(2) of IIRIRA requires a release from "physical custody" after October 8, 1998; because West was not released from physical custody after October 8, 1998, the BIA held that § 1226(c) did not apply to West.   *Id.* at 1408-1410.

In this case, the record does not establish that Garcia Aguasvivas was "released after" October 8, 1998, from physical custody for a criminal offense listed in § 1226(c), even though this Court expressly ordered DHS to specify in the answer, and to document, "the date on which Petitioner was released from criminal incarceration for a crime listed in 8 U.S.C. § 1226(c)."   (ECF No. 2 at 2.)   DHS appears to contend that Garcia Aguasvivas is subject to detention under § 1226(c) without a bond hearing simply because on October 9, 2001, New York entered a judgment imposing a sentence of imprisonment of one day and probation for five years.   However, this Court may not so cavalierly disregard the statutory requirement for "release after" October 8, 1998.   Because nothing in the record before this Court (or presumably the records of DHS) establishes that Garcia Aguasvivas was in fact released from physical incarceration for an offense listed in § 1226(c) after October 8, 1998, under BIA precedent, he is not subject to detention without a bond hearing under § 1226(c).   *See Matter of West*, 22 I.&N. Dec. 1405 (BIA 2000).

C.   "When the Alien is Released"

Alternatively, this Court will consider whether a reading of 8 U.S.C. § 1226 which denies a bond hearing to an alien who was allegedly released from one day of incarceration for a crime listed in § 1226(c), nine years before DHS took him into custody, is reasonable.[4]   When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue.   If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.   If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute . . . .   Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnotes omitted).

Significantly, if the agency's "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [a court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron*, 467 U.S. at 845 (*quoting United States v. Shimer*, 367 U.S. 374, 382 (1961)).

*Matter of Rojas* involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration for an offense covered by § 1226(c), and instead waited two days before taking him into custody.   *See Matter of*

---

[4]  Since Aguasvivas has not argued that his detention has become prolonged under Diop v. ICE/Homeland Sec., 656 F. 3d at 232, this Court will not consider that question.

8

*Rojas,* 23 I. & N. Dec. 117.   First, the BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings.  *Id.* at 120.   Then the BIA "construe[d] the phrasing 'an alien described in paragraph (1),' as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the 'when released' clause."  *Id.* at 125. The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody." *Id.* at 127.   In *Matter of Garcia Arreola*, 25 I.&N. Dec. 267, 270 (BIA 2010), the BIA ruled that § 1226(c) applies only where the alien has been released from custody for one of the offenses enumerated in that section after October 8, 1998.   The BIA determined that Garcia Arreola was not subject to mandatory detention because he was released from non-DHS custody resulting from assault crimes which were not offenses under § 1226(c)(1).   In a footnote, the BIA states that it is not receding from *Matter of Rojas*, 23 I.&N. Dec. 117.

In several prior cases, this Court has ruled that deference to the BIA's reading of § 1226(c) in *Rojas* is not warranted because Congress clearly intended to exclude aliens who were released from criminal incarceration several years before DHS took them into custody from the category of aliens detained without a bond hearing under § 1226(c).  *See, e.g., Morrison v. Elwood*, Civ. No. 12-4649 (PGS), 2012 WL 5989456 (D.N.J. Nov. 29, 2012); *Cox v. Elwood*, Civ. No. 12-4403 (PGS), 2012 WL 3757171 (D.N.J. Aug. 28, 2012); *Martial v. Elwood*, Civ. No. 12-4090 (PGS), 2012 WL 3532324 (D.N.J. Aug. 14, 2012); *Nunez v. Elwood*, Civ. No. 12-1488 (PGS), 2012 WL 1183701 (D.N.J. Apr. 9, 2012).   DHS now argues that, since the issue before this Court is pending before the Third Circuit,[5] and the Fourth Circuit determined that § 1226(c) is ambiguous and the BIA's reading

---

[5] *See Sylvain v. Holder*, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing); *Desrosiers v. Hendricks*, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of Judge Hochberg's order denying habeas relief).

of the statute is reasonable, *see Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012),[6] this Court should reconsider its prior analysis and deny habeas relief, or stay this case pending a ruling from the Third Circuit.  While this Court sees no basis for a stay, this Court will not repeat the statutory interpretation analysis set forth in its prior opinions, but will shift the focus from the absence of ambiguity in § 1226(c) to whether a reading of the statute that denies a bond hearing to an alien who was (allegedly) released from one day of criminal incarceration nine years before DHS took him into custody is a reasonable one.

In deciding that the BIA's reading of the statute was reasonable, the Fourth Circuit did not compare the language in § 303(a) of IIRIRAA with the language in § 303(b) of IIRIRA.  Section 303(a) of IIRIRA contains 8 U.S.C. § 1226 (in its entirety) and § 303(b) of IIRIRA specifies that "the provisions of section [1226(c)] shall apply to individuals released after" the expiration of the Transition Period Custody Rules ("TPCR").  The TPCR were in effect for two years and required DHS to take into custody a criminal alien "when the alien is released," but also allowed DHS to release some of these criminal aliens on bond if the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  IIRIRA, Pub. L.No. 104-128, § 303(b)(2), 110 Stat. 3009.

Reading sections 303(a) and 303(b) together, however, requires one to confront two points which bear on construction of the statute as a whole.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").  First,

---

[6] The Fourth Circuit "conclude[d] that it is far from plain, and indeed unlikely, that 'when . . . released' means 'at the moment of release, *and not later*.'"  *Hosh*, 680 F.3d at 380 (emphasis in original).  "The negligence of officers, agents, or other administrators, or any other natural circumstance or human error that would prevent federal authorities from complying with § 1226(c), cannot be allowed to thwart congressional intent and prejudice the very interests that Congress sought to vindicate."  *Id.* at 381.

since § 303(b) makes the provisions of § 1226(c) applicable only to aliens "released after" the expiration of the TPCR on October 8, 1998,[7] then the limiting language "when the alien is released" in sections 303(a) and 303(b) could not mean the same thing as the language "individuals released after."  Yet the essence of *Rojas* and the government's argument here is that Congress intended the words "when the alien is released" to mean or encompass "after the alien is released."  But it is obvious from § 303(b) that Congress knew how to apply provisions of the statute to "individuals released after" a point in time when it wanted to do so.  *See Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1230 (W.D. Wash. 2004) ("[I]f Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect").  Second, "if § 1226(c) subjected aliens to mandatory detention even where there was a gap of several years between the alien's release from criminal incarceration (after October 8, 1998) and his immigration detention, then there was no need for Congress to have delayed implementation of § 1226(c) for two years, since DHS could have simply waited for as many years as it needed to take aliens into custody who were released from criminal incarceration after the effective date of IIRIRA."  *Davis v. Hendricks*, Civ. No. 12-6478 (WJM), 2012 WL 6005713 at *10 (D.N.J. Nov. 30, 2012).

Accordingly, reading subsections (a) and (b) of § 303 of IIRIRA together raises a question regarding the reasonableness of a construction of the statute that would apply § 1226(c)'s requirement to detain without a bond hearing to all aliens "released after" criminal incarceration for an offense specified in § 1226(c).

---

[7] *See Saysana v. Gillen*, 590 F.3d 7, 10 n.2 (1st Cir. 2009) ("The TPCR expired on October 8, 1998, and the mandatory detention provision of 8 U.S.C. § 1226(c) became effective").

In addition, if Congress intended to irrebuttably presume that a person like Garcia Aguasvivas, who allegedly served one day in jail in 2001, poses a danger to the community and a flight risk after living without incident in the community for nine years, then Congress skirted dangerously close to depriving such an alien of his liberty without due process of law, contrary to the Fifth Amendment. The Fifth Amendment forbids the government from "depriv[ing a person] of life, liberty, or property, without due process of law." U.S. Const. amend.V. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). "[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are [civilly] committed." *Seling v. Young*, 531 U.S. 250, 265 (2001).

The Supreme Court has recognized two justifications for detention without a hearing under § 1226(c): "(1) ensuring the presence of criminal aliens at their removal proceedings; and (2) protecting the public from dangerous criminal aliens." *Demore v. Kim*, 538 U.S. 510, 515 (2003). It is one thing to irrebuttably presume flight risk and dangerousness of an alien who just finished serving a criminal sentence, but quite another to presume without a hearing that an alien who has lived in the community for nine years after being released from criminal incarceration still poses a flight risk and a danger to that community. The reasonableness of an irrebuttable presumption of dangerousness and risk of flight has a temporal limit. The Third Circuit observed this principle in *Diop* when it found that, "[a]t a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the

law's purposes of preventing flight and dangers to the community . . . .   In short, when detention becomes unreasonable, the Due Process Clause demands a hearing [to determine that] detention is necessary to fulfill the purposes of the detention statute."   *Diop*, 656 F.3d at 232, 233; *see also Zadvydas*, 533 U.S. at 699 "('*Cessante ratione legis cessat ipse lex'*) (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)" (*quoting* 1 E. Coke, Institutes *70b).   The presumption of dangerousness and risk of flight is even more attenuated in this case than it was in *Diop*, given that Mr. Diop was detained for 35 months, but Mr. Garcia Aguasvivas in fact lived without incident in the community for nine years after he (allegedly) served his one-day criminal sentence.   *See Saysana*, 590 F.3d at 17-18 ("By any logic, it stands to reason that the more remote in time a conviction becomes . . , the lower his bail risk is likely to be").

The canon of constitutional avoidance is a canon of statutory construction that "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means of choosing between them*."   *Clark v. Martinez*, 543 U.S. 371, 384 (2005); *see also Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568, 575 (1988) (An agency's interpretation of a statute "would normally be entitled to deference unless that construction were clearly contrary to the intent of Congress . . .   Another rule of statutory construction, however, is pertinent here:   where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress") (citations omitted).   "[O]ne of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the

reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. The canon is thus a means of giving effect to congressional intent, not of subverting it." *Clark*, 543 U.S. at 381-82.[8]

In this case, DHS's construction of § 1226(c) would require this Court to face the serious constitutional issue as to whether Garcia Aguasvivas' detention without a bond hearing deprives him of liberty without due process, given that he lived in the community without incident for nine years since his release from criminal incarceration of one day for an offense specified by § 1226(c). Because the BIA's interpretation of § 1226(c) presents "a significant risk" that the Fifth Amendment's Due Process Clause "will be infringed," *National Labor Relations Board v. The Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979), the canon of constitutional avoidance directs this Court to "independently inquire whether there is another interpretation, not raising these serious constitutional concerns, that may fairly be ascribed to [§ 1226(c]." *Edward J. DeBartolo Corp.*, 485 U.S. at 577.

This Court finds that § 1226(c) is open to a construction that obviates deciding whether Mr. Garcia Aguasvivas' pre-removal period detention without a bond hearing would deprive him of liberty without due process in violation of the Fifth Amendment. Applying the can of constitutional avoidance, this Court reads § 1226(c) as limiting the denial of a bond hearing to those specified criminal aliens whom DHS took into custody when the alien was released from criminal

---

[8] For example, "*Zadvydas* did not hold that [8 U.S.C. § 1231(a)(6)] authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." *Clark*, 543 U.S. at 384. Also, in *Diop*, applying the canon of constitutional avoidance, the Third Circuit held that Congress did not intend in § 1226(c) to authorize prolonged, unreasonable, detention without a bond hearing. "Accordingly, we conclude that § 1226(c) contains an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length. After that, § 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose." *Diop*, 656 F.3d at 235.

14

incarceration for on offense specified in § 1226(c) or within a reasonable period of time of release.[9] Because DHS did not take Mr. Garcia Aguasvivas into custody until nine years after he was (allegedly) released from one day of criminal incarceration, DHS did not take him into custody "when the alien is released" or within a reasonable period of time of his release. His detention is therefore not governed by § 1226(c), and he is entitled to a bond hearing under § 1226(a) to determine if he presently poses a flight risk or danger to the community.

### III.   CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

April 15, 2013

---

[9] *See Pujalt-Leon v. Holder*, __ F.Supp.2d __, 2013 WL 1207989 at *12 (M.D. Pa. Mar. 25, 2013) ("[T]he plain meaning of the statute provides that § 236(c) only applies to aliens detained immediately after release from custody or within a reasonable time after release from incarceration, and not to aliens released almost four years earlier"); *Espinoza v. Aitken*, 2013 WL 1087492 at *7 (N.D. Cal. mar. 13, 2013) ("[T]his court holds that the 'when . . . released' clause of § 1226(c) means something.  Aliens subject to mandatory detention must be inadmissible or deportable under subsection (1) of § 1226(c) and must also be detained at the time they are released from criminal custody, or within a reasonable period of time thereafter, in order to be considered 'an alien described in paragraph (1)' for the purposes of § 1226(c)(2)") (footnote omitted); *Khodr v. Adduci*, 697 F.Supp.2d 774, 780 (E.D. Mich. 2010) ("The Court is further well aware of the difficulties that a literal 'immediacy' requirement would pose, and finds that immediacy contemplates that the Attorney General has a reasonable period of time after release in which to take the suspect alien into custody . . . .  The Court need not establish a bright line test for 'reasonableness' here since it finds that the four year plus delay in taking Petitioner into custody was clearly an unreasonable delay"); *cf. Rojas*, 23 I.& N.Dec. at 128 (finding that alien taken into immigration custody two days after release from criminal incarceration was subject to detention under § 1226(c), since "[i]t is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of the Service to appear at the jailhouse door to take custody of an alien at the precise moment of release").